**FORGIONE v. UNITED STATES et al.**

**NICASTRO v. UNITED STATES et al.**

**Nos. 9, 11 of 1948, Admiralty.**

United States District Court,
E. D. Pennsylvania.

Sept. 26, 1951.

Herman Moskowitz (of Stark & Goldstein), Philadelphia, Pa., for libellants.

Patrick F. Cooney, Dept. of Justice, Washington, D.C., Gerald A. Gleeson, U.S. Atty., and James P. McCormick, Asst. U.S.Atty., Philadelphia, Pa., for respondents.

BARD, District Judge.

These are two actions in admiralty by two merchant seamen against one ship owner and its agent for alleged false imprisonment or malicious prosecution. The operative facts in each are identical, and the cases were tried simultaneously. On the basis of the pleadings and the testimony, I make the following special

### Findings of Fact.

1. Libellant in Admiralty Action No. 9 of 1948 is Anthony Forgione, a resident of Philadelphia, Pennsylvania, and a merchant seaman for the purposes of this action.

2. On October 31, 1945 Forgione was employed as a member of the crew in the capacity of utility man on board the S.S. George Whitefield for a voyage not to exceed twelve months from Philadelphia, Pennsylvania, to foreign ports and to return to a port in the United States. Forgione's rate of pay was $132.50 per month, plus overtime and found.

3. Libellant in Admiralty Action 11 of 1948 is Salvatore Nicastro, a resident of Philadelphia, Pennsylvania, and a merchant seaman for the purposes of this action.

4. On October 31, 1945 Nicastro was also employed as a member of the crew aboard the George Whitefield for the same voyage, but in the capacity of second cook and baker. Nicastro's rate of pay was $167.50 per month, plus overtime and found.

5. Respondents in both actions are the United States of America and the United States Maritime Commission.

6. Respondent United States of America, through the War Shipping Administration, the predecessor of respondent Maritime Commission, was the owner of the George Whitefield at all times mentioned herein.

7. The George Whitefield commenced the voyage here involved on October 31, 1945 from the Port of Philadelphia to various European ports, including Trieste and Bari, Italy.

8. During the first part of this voyage libellants unjustifiedly assaulted, beat and threatened the lives of other crew members and some ship's officers. At other times libellants were intoxicated and insubordinate.

9. The captain of the George Whitefield did not have libellants arrested while the vessel was in Trieste because that port was under the control of British military authorities.

10. The port of Bari was under the control of United States military authorities.

11. The George Whitefield arrived in Bari the week before Christmas, 1945, and remained there until January 29, 1946.

12. On the night of January 21, 1946 libellants, without justification, assaulted Harry Harper, a fellow crew member, broke down the door to his quarters, and threatened his life. Fearful for his life, Harper fled the vessel, spent the night on shore, returned the next morning and asked the captain to pay him off.

13. Whereupon, on January 22, 1946, the captain and Harper went ashore and proceeded to the United States Military Police headquarters, where Harper, with the captain's consent, made out a formal complaint against libellants.

14. On the same day the United States Military Police arrested libellants and held them in jail.

15. During the period libellants were detained in jail, the captain brought them their clothing and belongings from the ship and attempted to pay them off, which payment they refused.

16. The captain also told them of the charges that were preferred against them, that they were to get a hearing, and that they were to be released from jail after the vessel left Bari.

17. At that time the captain told the military police authorities that he wanted libellants to have a hearing, but that they were to be released from jail after the vessel sailed.

18. Neither the captain nor Harper was notified to attend libellants' hearing.

19. Libellants did not have a hearing before the vessel sailed from Bari.

20. The charges against libellants were dropped by order of the captain.

21. The George Whitefield sailed from Bari on January 29, 1946, and terminated its voyage at Searsport, Maine, on March 15, 1946.

22. It was necessary for the safety of the crew and the vessel that libellants be removed from the ship when they were arrested.

23. Respondents had good cause to have libellants arrested.

24. Respondents did not have libellants arrested maliciously.

25. Libellants were released by the military police authorities on January 29, 1946 to the custody of the War Shipping Administration in Bari and were given train tickets to Naples, Italy. At Naples the War Shipping Administration repatriated libellants to the United States aboard the S.S. Elwood Meade, which sailed from Naples on January 30, 1946 and arrived in Charleston, South Carolina on February 21, 1946.

26. Nicastro earned about $30 on the voyage from Naples to Charleston. Forgione earned an undetermined amount.

27. Libellants proceeded from Charleston to Philadelphia via railroad, each paying his own fare of $16.

28. On March 9, 1946 libellants were paid their wages in full to January 22, 1946 by the United States Shipping Commissioner in Philadelphia.

29. Libellants each spent about $27.50 per week for room and board from February 21, 1946 to March 15, 1946.

30. While aboard the George Whitefield for a period of two months and twenty-two days, Forgione earned a total of $517.17, including base pay, overtime and possible ammunition bonus; Nicastro earned a total of $612.83.

31. Libellants were entitled to a monthly bonus of 10% of their base pay when the George Whitefield was transporting ammunition. The vessel was loading bombs and fuses at Bari.

32. Prior to his signing on board the George Whitefield, Forgione had on three occasions been convicted and sentenced to prison for crimes of violence—stealing, larceny and robbery, respectively.

### Discussion.

The gist of an action for false imprisonment is unlawful or illegal detention, a restraint upon an individual's liberty and freedom without color of legal authority. Riegel v. Hygrade Seed Co., Inc., D.C., 47 F.Supp. 290–293–294.

On the other hand, malicious prosecution is the remedy when the detention was lawful, but was commenced or continued without probable cause and with malice, and has been terminated favorably to the plaintiff of the malicious prosecution suit. Riegel v. Hygrade Seed Co., Inc., supra.

In these cases each complaint alleges that respondents "maliciously and without reasonable or probable cause, procured the libellant's forcible arrest." Unless "forcible arrest" means unlawful arrest or arrest without color of legal authority, the essence of each complaint is an action for malicious prosecution. However, libellants proceeded at their trial on the theory of false imprisonment.

This discrepancy is unimportant, because the arrests were lawful, there was no malice, and there was not only probable but good cause.

The evidence shows that libellants acted like thugs and hoodlums and the captain of the ship was fully justified in having them arrested and removed from his vessel.

Bari, at the time of libellant's arrest, was a war zone under the control of military authorities, and was therefore under military law. Whether libellants were subject to army military law or to naval jurisdiction, their conduct was punishable by courts-martial, and their arrests were lawful.

Under military and naval jurisdiction drunkenness, insubordination, assaults, quarreling, fomenting quarrels, and the destruction of property are offenses for which libellants could and should be punished.

10 U.S.C.A. §§ 1535, 1536, 1555, 1557, 1561, 1562, 1565, 1568[1]; 34 U.S.C.A. § 1200 arts. 4(11), 8(1), 8(3), 8(4), 8(6), 8(10), 22(a)[2].

Under naval jurisdiction there are two types of arrest—arrest for safekeeping and arrest for trial. It is only under an arrest for trial that charges and specifications must be served simultaneously with the arrest. See Ex parte Webb, D.C., 84 F. Supp. 568, 569–570; 19 Op. Attys. Gen. 472; 34 U.S.C.A. § 1200, arts. 24, 43[3]. If libellants were arrested under naval jurisdiction, it could well have been for safekeeping, but nevertheless formal charges were filed against them before they were arrested, and they were informed of these charges.

Libellants were also subject to military law, see In re Berue, D.C., 54 F.Supp. 252, 255–256; 10 U.S.C.A. § 1473(d)[4], and in that case formal charges did not have to be filed against them for eight days after their arrest. 10 U.S.C.A. § 1542[5].

Obviously, there was compliance under either military or naval law, and the arrests were lawful.

Surely, libellants should not be heard to complain if respondents relent, as the captain did before the vessel sailed from Bari, and order that the charges against them be withdrawn.

Libellants should be grateful that they were not arrested in Trieste, that the charges against them in Bari were dropped, and that they were not prosecuted in the United States. Instead, they showed their gratitude by bringing these actions.

Forgione was not present at the trial. Nicastro was present and did testify; but no credibility can be attached to his testimony concerning the operative facts of these cases.

Conclusions of Law.

1. This Court has jurisdiction of these cases.

2. Libellants' actions aboard the George Whitefield violated military and naval law.

3. Libellants were lawfully arrested.

4. The charges against libellants were based upon good cause and were brought without malice.

5. Libellants have not borne their burden of proving either a cause of action for false imprisonment or for malicious prosecution.

6. Judgment is hereby entered for respondents in Admiralty Action No. 9 of 1948.

7. Judgment is hereby entered for respondents in Admiralty Action No. 11 of 1948.

---

1. Repealed by Act of May 5, 1950, c. 169, § 14, 64 Stat. 147, repeal effective May 31, 1951.
2. Ibid.
3. Ibid.
4. Ibid.
5. Ibid.